PATHWAY BELLOWS, INC.,
Plaintiff–Appellee,

v.

Robert W. BLANCHETTE, Richard C. Bond and John H. McArthur, Trustees of the Penn Central Transportation Co., Defendants–Appellants.

No. 882, Docket 79–7860.

United States Court of Appeals, Second Circuit.

Argued March 19, 1980.

Decided Sept. 2, 1980.

Kenneth R. Feit, David H. Deitsch, Gates, Singer & Deitsch, Rockville Centre, N. Y., for plaintiff–appellee.

Hyman Hillenbrand, Bleakley, Platt, Schmidt & Fritz, New York City, for defendants–appellants.

Before WATERMAN, MANSFIELD and TIMBERS, Circuit Judges.

WATERMAN, Circuit Judge:

Defendant–appellants, Trustees of the Penn Central Transportation Co. (Penn Central), appeal from a judgment entered in the United States District Court for the Southern District of New York (Sand, District Judge), which granted the motion of plaintiff–appellee Pathway Bellows for summary judgment. For the reasons stated below, we reverse the judgment of the district court.

The parties agreed upon all the relevant facts, and the case was submitted to the court below on cross–motions for summary judgment. We briefly summarize those facts before our review of the reasoning and decision of the district court.

On September 24, 1974 Pathway Bellows contracted with the receiving carrier, the San Diego & Arizona Eastern Railway Co. (SD & A) to transport a shipment of metal expansion joints from El Cajon, California to the Gouverneur Iron Works in Oswego, New York. The shipment arrived at its destination on October 22, 1974, where it was delivered by Penn Central, the delivering carrier, in a damaged condition. Pursuant to a telephone request, a Penn Central agent examined the shipment and prepared a Freight Inspection Report dated October 22, 1974, which noted damage, damage which the parties later stipulated totaled $40,000.

One of the provisions of the bill of lading issued by SD & A for this shipment required Pathway Bellows to submit any damage claims in writing, and to file them with an appropriate carrier within 9 months of the date of delivery of the damaged property.[1] The parties have agreed that this 9 month period began on October 22, 1974, and expired on July 22, 1975.

On May 12, 1975, Pathway Bellows sent to Penn Central the following letter:

Although we have contacted your company earlier, the purpose of this letter is to state, in writing, that we are in the process of filing a claim for freight damage of a shipment to Gouverneur Iron Works, Oswego, New York.

This letter also made reference by caption to the Freight Inspection Report, the Way Bill covering the shipment and the railroad car in which the shipment was transported.

On July 22, 1975, Pathway Bellows sent to SD & A a more detailed letter, which SD & A received the following day. This letter asserted the claim of Pathway Bellows for damages to the shipment of expansion joints, and advanced a specific dollar amount for the alleged liability.[2]

In the district court the sole question for resolution was whether Pathway Bellows had complied with the contractually imposed condition precedent to maintain an action to recover its damages, i. e., whether Pathway Bellows had timely filed with an appropriate carrier a proper written claim. With reference to Pathway Bellows's letter of May 12, 1975, the court below held that, although timely filed, the letter was formally deficient in several important respects, and therefore could not qualify as a proper written claim. We shall defer further discussion of this ruling until we have addressed the district court's treatment of the July 22, 1975 letter.

Penn Central conceded that Pathway Bellows's July 22, 1975 letter contained all elements necessary to classify it as a proper written claim, but maintained that the letter was not timely filed, because although mailed by Pathway Bellows on the final day of the 9 month claim period, it was not received by SD & A until the day after the claim period had expired. Because "filed" was not defined in the bill of lading or in the applicable statute and regulations, the court below regarded the term as somewhat ambiguous. Although recognizing that the word "filed" had a well–established technical meaning in other areas of the law, and

---

1. At the time this lawsuit arose, section 20(11) of the Interstate Commerce Act, 49 U.S.C. § 20(11), commonly known as the Carmack Amendment, provided in relevant part that "it shall be unlawful for any . . . carrier to provide . . . a shorter period for the filing of claims than nine months . . . ." On October 17, 1978, the Interstate Commerce Act was revised, codified, and enacted, without substantive change, as subtitle IV of Title 49 of the United States Code. The relevant portion of the Carmack Amendment currently appears, with minor changes in phraseology, as 49 U.S.C. § 11707(e) (Supp. II 1978). Carriers have implemented this statutory directive by including in the Uniform Bill of Lading the

following provision, which has been approved and prescribed by the Interstate Commerce Commission:

2(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier . . . within nine months after delivery of the property. . . . Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

2. Pathway Bellows subsequently sent letters to both Penn Central and SD & A, which amended the amount of damages claimed.

that such meaning implicitly equated a filing with the date of receipt of the item to be filed, the court concluded that such a technical construction was inappropriate to a situation involving only private parties. The court noted that, as between private parties, papers are "served" rather than "filed," and the date of service is equated with the date of mailing. Applying this construction of the term "filed" to the facts of this particular case,[3] the court below held that, because Pathway Bellows had mailed a proper written claim on the final day of the .9 month claim period, the claim had been timely filed and the terms of the bill of lading had been timely complied with. Accordingly, the district court denied Penn Central's motion for summary judgment and granted Pathway Bellows's motion, from which grant the defendant–Trustees appeal.

■ As an initial matter, we agree with the defendant–Trustees that the district court's construction of the word "filed" finds neither support nor precedent in case law. Indeed, relevant authority is uniformly to the effect that a paper will not be considered "filed" until it has been delivered to and received by the party with whom it is to be filed. *See United States v.*

*Lombardo,* 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1916); *Laser Grain Co. v. United States,* 250 F. 826 (8th Cir. 1918); *In re Imperial Sheet Metal, Inc.,* 352 F.Supp. 1149 (M.D.La.1973); *President & Dirs. of Manhattan Co. v. Laimbeer,* 108 N.Y. 578, 15 N.E. 712, 71 N.Y.S.App. 656·(1888); *Schaffer v. Pennsylvania R.R.,* 127 N.Y.S.2d 466 (Mun.Ct.1950), *aff'd,* 127 N.Y.S.2d 468 (Sup.Ct. App. Term 1952).

We do not believe the present case is sufficiently distinguishable from prior case law to warrant a different construction of the word "filed," and we find that the court below erred in holding that the claim of Pathway Bellows was filed when the letter of July 22, 1975 was deposited in the mail. Instead, we hold that, because SD & A did not receive this letter until the day after the 9 month claim period had expired, the claim was not timely filed as required by the terms of the bill of lading.

■ We now return to the district court's treatment of the May 12, 1975 letter. In addressing this issue, the court below first determined that the requisite characteristics of a proper written claim had been codified in certain regulations issued by the Interstate Commerce Commission.[4] The

---

3. Although the court below stated that "were we required to resolve the question  .  .  . whether in all cases a claim is 'filed' upon mailing or upon receipt by the carrier, we would be inclined to conclude that a claim is filed when it is mailed by the claimant," it made every effort to appear not to rely explicitly on this approach but attempted to limit its holding to the factual situation presented in this case. Accordingly, the court framed its holding as follows:

> [A]t least where the shipper has furnished written notice within the period required by the bill of lading that it is in the process of filing a claim for damages, and identifies that claim with some specificity, such a claim when subsequently made and received by the carrier will be deemed to have been filed when it is deposited in the mail, not when it is received by the carrier.

4. These regulations appear at Part 1005 of Title 49 of the Code of Federal Regulations. The court below found the following sections to be controlling:

> § 1005.2 Filing of claims.
> .    .    .    .    .

(b) *Minimum filing requirements.* A communication in writing from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1)̇ Containing facts sufficient to identify the baggage or shipment (or shipments) of property involved, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

(c) *Documents not constituting claims.* Bad order reports, appraisal reports of damage, notations of shortage or damage, or both, on freight bills, delivery receipts, or other documents, or inspection reports issued by carriers or their inspection agencies, whether the extent of loss or damage is indicated in dollars and cents or otherwise, shall, standing alone, not be considered by carriers as sufficient to comply with the minimum claim filing requirements specified in paragraph (b) of this section.

district court then examined the May 12, 1975 letter and found that it lacked two of the three minimum claim filing requirements established by the regulations, for it failed to assert that Penn Central was liable for any loss, and it failed to claim a specified or ascertainable amount of money as damages. Thus the court ruled that the Pathway Bellows letter of May 12, 1975 was not a proper written claim within the meaning of the regulations.

Although we do not agree with Pathway Bellows's argument that the facts do not support the district court's findings relative to the May 12, 1975 letter and that its ruling thereto should be reversed as clearly erroneous, a case recently decided by the U.S. Court of Appeals for the Seventh Circuit appears to suggest that the regulations relied on in the court below do not provide the proper standard for assessing the sufficiency of contested claims.

In that case, *Wisconsin Packing Co. v. Indiana Refrigerator Lines*, 618 F.2d 441 (7th Cir. 1980) (en banc), cert., denied, —— U.S. ——, 101 S.Ct. 112, 66 L.Ed.2d 44 (1980), the court declared that the subject regulations were intended to apply to voluntary dispositions of claims by carriers so as to insure that the process of claims settlement by carriers would be more expeditious and less subject to discriminatory manipulation, *Id.* at 445. Where, however, the mechanisms of voluntary claims settlement were not employed, *i. e.*, where a carrier disputed its liability and a judicial determination of the validity of the disputed claim was sought, the *Wisconsin Packing* court concluded that the subject regulations did not dictate the form a claim must take. Rather, the sufficiency of a claim in such a situation was to be assessed under the case law in existence prior to the regulations issued by the I.C.C.[5]

**5.** The governing standard initially was set forth by the Supreme Court in *Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 36 S.Ct. 541, 60 L.Ed. 948 (1916), where the Court made clear that satisfaction of the shipper's obligation to submit to the carrier a written claim "does not require documents in a particular form. It is addressed to a practical exigency and it is to be construed in a practical way." *Id.* at 198, 36 S.Ct. at 545.

Through the years, courts occasionally have attempted to refine the very general *Blish Milling* standard. *See, e. g., Insurance Co. of North America v. Newtowne Mfg. Co.*, 187 F.2d 675 (1st Cir. 1961) (written claim requirement will be satisfied by submission of "a written document, however informal in expression, indicating an intention on the shipper's part to claim reimbursement from the carrier for a loss asserted to have occurred in the past, and sufficiently identifying the shipment in question . . . ." *Id.* at 681).

However, because the case law has not brought the contours of a properly constituted claim into very sharp focus, and because of the well-recognized policy underlying the written claim requirement, *i. e.*, not to permit the carrier to escape liability, but to insure that the carrier may make a prompt and thorough investigation of the claim, *see Blish Milling, supra*, 241 U.S. at 198, 36 S.Ct. at 545, courts applying the case law standard have been extremely reluctant to conclude that the written claim requirement has not been satisfied in any situation where a carrier has seen a written document noting damage to a particular shipment and implying the carrier's responsibility

therefor. *See Wisconsin Packing Co., supra*, 618 F.2d at 446 and cases there cited.

We do not believe that the ICC, in promulgating the claim-filing regulations, intended a radical departure from the claim investigation policy underlying the written claim requirement. To the contrary, the applicable section of the regulations and the relevant source material indicate a clear intention to encourage the investigation of claims by carriers. *See* 49 C.F.R. § 1005.4; *Ex Parte No. 263, supra*, 340 I.C.C. at 559-68.

Neither do we believe that the ICC, by specifying minimum claim-filing requirements, intended to afford carriers an unfair opportunity to escape liability. The minimum filing requirements appear to call for no more information than one ordinarily would expect a claim for damages to contain, and compliance with these requirements is neither onerous nor unreasonable. To the extent that carriers may escape liability, such "windfalls" may be properly traced, not to the existence of the regulations, but to shippers' unexcused failure to comply with a reasonable condition contained in bills of lading.

However, we do agree with the implicit conclusion of the *Wisconsin Packing* court that the very fact that the regulations identify a properly constituted claim as one that contains certain minimum filing requirements distinguishes the standard established by the I.C.C. regulations from the standard established by the case law.

From our examination of the regulations and the relevant source material,[6] we do not believe that the dual standards for assessing the sufficiency of claims, depending upon whether the carrier voluntarily decides to settle a claim or to contest its liability, were either intended or mandated.[7] Although we agree with the *Wisconsin Packing* court that the ICC's principal aim in promulgating these regulations was to encourage parties to settle claims instead of resorting to costly time–consuming litigation, and although we recognize that the ICC lacks the adjudicative authority to pass on the merits of claims,[8] we point out that there is a vast difference between prescribing the form a properly constituted claim must take and that of determining the substantive merits of that claim.

Furthermore, the regulations impose numerous obligations upon carriers, which are triggered by the receipt of a "claim."[9] Having thus required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a claim, so that a carrier may know one when it sees one. Therefore, we agree with the court below that the regulations provide the appropriate standard for assessing the sufficiency of all claims irrespective of the way they may subsequently be resolved or adjudicated.

In summary, we agree with the ruling of the district court that the Pathway Bellows letter of May 12, 1975 was inadequate in form to constitute a written claim. However, we conclude that the district court erred in finding that the Pathway Bellows letter of July 22, 1975 was timely filed

---

6. The regulations were formulated in a rather extensive rulemaking proceeding conducted by the ICC. *Ex Parte No. 263: Rules, Regulations, and Practices of Regulated Carriers with Respect to the Processing of Loss and Damage Claims*, 340 I.C.C. 515 (1972). In addition, certain prefatory material accompanied the publication of the regulations in the Federal Register. 37 Fed.Reg. 4257 (March 1, 1972).

7. Certainly, there is no explicit expression in the regulations themselves that their applicability is intended to be limited solely to those claims that carriers decide to settle voluntarily. To the contrary, 49 C.F.R. § 1005.1, the section dealing specifically with the applicability of the regulations, provides as follows:

> The regulations set forth in this part shall govern the processing of claims for loss, damage, injury, or delay to property transported or accepted for transportation, in interstate or foreign commerce, by each [carrier] . . . subject to the Interstate Commerce Act . . . .

Moreover, the ICC quite clearly stated that:

> We are persuaded by the record in this proceeding that our regulations should embrace the full range of matters relating to the filing of claims, including a prescription of minimum filing requirements and a consideration of documents that do not constitute claims, and claims for uncertain amounts.
>
> . . . . Thus, the rules set forth in sections 1005.1 and 1005.2 . . . first establish their overall applicability and then set out the manner and form in which loss and damage claims must be filed by claimants in order to accomplish the improvements shown to be required in the public interest in this area.

*Ex Parte No. 263, supra*, 340 I.C.C. at 55–56.

It appears, therefore, that the ICC intended to promulgate regulations that would apply generally to all claims and we can perceive no lack of statutory authority vested in the Commission which would frustrate it from fulfilling its intention. See discussion of statutory and case law basis for the Commission's authority to promulgate these regulations in *Ex Parte No. 263, supra*. 340 I.C.C. at 542–46.

8. The ICC itself was well aware of the limits of its jurisdiction in this area: "This Commission has consistently held that it does not have jurisdiction to determine the merits or the measure of damages of particular loss and damage claims, those being cognizable only in the courts." *Ex Parte No. 263, supra*, 340 I.C.C. at 539.

In an attempt to remedy this lack of jurisdiction, the ICC proposed certain legislation that would have conferred on the Commission original jurisdiction to adjudicate the merits of loss and damage claims. *See Ex Parte No. 263, supra*, 340 I.C.C. at 588–97, 721–22. Congress, however, did not follow the Commission's recommendation and declined to enact the necessary enabling legislation.

9. *See, e. g.,* § 1005.3(b) (carrier must create individual file and assign file number to claim upon receipt of same); § 1005.3(a) (carrier shall acknowledge receipt of claim within 30 days of receiving same); § 1005.5 (carrier shall pay, decline, or make firm settlement offer in writing to claimant within 120 days after receipt of claim).

when mailed, for we hold that, because this letter was received after the 9 month claim period had expired, it cannot qualify as a timely filed claim. We, therefore, hold that as Pathway Bellows failed to comply with the contractually imposed condition precedent to maintain an action to recover its damages, the defendant–Trustees were entitled to prevail on their motion for summary judgment. Although it may appear Draconian to require that Pathway Bellows lose a $40,000 recovery because its claim letter was received one day late, Pathway Bellows has identified no special circumstances that would entitle it to be relieved of the admittedly severe consequences of its own procrastination.[10]

The judgment of the district court is reversed, and the cause is remanded for entry of judgment in favor of the defendant–Trustees.

---

**10.** Had any conduct on the part of Penn Central misled Pathway Bellows into believing that there was no need to file a claim, or that the letter of May 12, 1975 was sufficient to constitute a claim, Penn Central might be held estopped from insisting on Pathway Bellows's compliance with the timely written claim requirement contained in the bill of lading. *See, e. g., Perini–North River Associates v. Chesapeake & O. Ry.*, 562 F.2d 269, 272–73 (3d Cir. 1977). Similarly, if Pathway Bellows could not, in the exercise of reasonable diligence, have ascertained the extent of its loss within the 9 month claim filing period, untimely filing of a completed claim might be viewed as excusable. *See ex Parte No. 263, supra*, 340 I.C.C. at 554–55.

Nothing in the present case, however, indicates that the reason for the untimely submission of Pathway Bellows's claim was attributable to either of these factors or to any factors beyond Pathway Bellows's control.