IMPERIAL NEWS CO., INC., Plaintiff,

v.

P–I–E NATIONWIDE, INC., Defendant.

No. CV 89–1428.

United States District Court,
E.D. New York.

Dec. 19, 1989.

Siegel, Fenchel & Peddy, P.C. by Saul R. Fenchel, Garden City, N.Y., for plaintiff.

Crowell, Rouse & Matera by Francis R. Matera, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Imperial News Co., Inc. ("Imperial") initially brought a breach of contract action in state court against common carrier P–I–E Nationwide, Inc. ("P–I–E"). Defendant P–I–E removed the action to this Court as a claim based on the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 11707, which provides for liability of a common carrier under a bill of lading. Imperial seeks damages caused by P–I–E's failure to deliver goods pursuant to a bill of lading contract entered into between the parties. P–I–E moves for summary judgment dismissing the complaint on the ground that Imperial failed to file a timely notice of claim as required by the bill of lading. For the reasons stated below, the motion is granted.

### I. *Background*

On April 23, 1987, Imperial, a distributor of various publications, entered into a contract with common carrier P–I–E to have a shipment of books transported from Melville, New York to Dresden, Tennessee. Pursuant to prior agreement between Im-

perial and Fawcett Books ("Fawcett"), the publisher, the books were being returned to Fawcett (the consignee) as unsold, and were designated as "scrap or waste." Immediately upon P–I–E's picking up the books, Imperial credited its account with Fawcett in the amount of $18,999.95, the value of the shipment.

As it turned out, the shipment was never delivered. It is undisputed that the shipment went as far as Bath, Pennsylvania, at which point it was either lost or stolen.

In late October 1987, Fawcett's parent company, Warner Publisher Services, Inc. ("Warner"), notified Imperial that the credit for the books was being disallowed because the books were never delivered. Imperial alleges that it then contacted P–I–E to determine the whereabouts of the shipment. Through its Vice President, Imperial claims that until notified by Warner, it "had no idea (or could reasonably have any idea) that the shipment was not delivered to Dresden." Affidavit of Leon Ajces para. 21. Imperial further maintains that it could not have been expected to know the shipment was lost, *id.*, and that P–I–E did not notify it that the goods were lost until March 1988, long after P–I–E first became aware of the loss. Memorandum of Law Submitted in Opposition to Defendant's Motion for an Order Dismissing the Complaint, at 3. In addition, in its brief in opposition, Imperial asserts that it made numerous calls to P–I–E "which were either unreturned or unavailing of any definitive information," and that P–I–E never "advised Imperial to complete a statement of loss." *Id.*

Nevertheless, Imperial did not file a notice of claim with P–I–E until May 26, 1988, when P–I–E received Imperial's notice of claim dated May 20, 1988. *See Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900, 904–05 (2d Cir.1980) (notice of claim filed when received, not when mailed), *cert. denied*, 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981). The Court notes that P–I–E does not challenge the sufficiency of the written notice, only its timeliness.

## II. *Discussion*

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987). The burden is upon the moving party to clearly establish the absence of a genuine issue as to any material fact, and "a court must resolve all ambiguities and draw all reasonable inferences against the moving party." *Id.* Since the presence of only a genuine and material issue of fact precludes the entry of summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), the summary judgment procedure allows a court to determine whether a trial is necessary. Further, on a motion for summary judgment, a court must be mindful that its role is not to try issues of fact, but to determine whether there are issues to be tried. *Donahue*, 834 F.2d at 58. With these principles in mind, this Court now turns to the instant motion.

### A. Reasonable Time For Delivery

Section 2(b) of the Uniform Straight Bill of Lading, the terms and conditions of which form the contract of carriage between Imperial and P–I–E, provides in relevant part:

As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier ... within nine months after the delivery of the property ..., except that claims for failure to make delivery must be filed within nine months after a reasonable time for delivery has elapsed.

Consequently, the sole question before this Court is whether Imperial complied with the contractually imposed condition precedent to maintain its claim for damages against P–I–E, that is, whether Imperial filed the notice of claim "within nine months after a reasonable time for delivery ha[d] elapsed." In this regard, plaintiff

contends that a reasonable time for delivery was more than 124 days. Vice President Ajces states that "[f]or goods of this nature—which (for purposes of shipment) are nothing more than scrap—it is not unreasonable for delivery to take weeks or even months." Affidavit of Leon Ajces para. 28. Defendant, on the other hand, maintains that a reasonable time was no more than six to seven days. Affidavit of James Riddle, Dated October 4, 1989, paras. 7–8.

In *Chesapeake & O. Ry. v. Martin*, 283 U.S. 209, 213, 51 S.Ct. 453, 455, 75 L.Ed. 983 (1931), the Supreme Court stated:

> What constitutes a reasonable time depends upon the circumstances of the particular case. As applied to a case like this, it means such time as is necessary conveniently to transport and make delivery of the shipment in the ordinary course of business, in light of the circumstances and conditions surrounding the transaction.

If delivery reasonably should have been completed on or before August 25, 1988 (nine months and one day before the notice of claim was filed), then Imperial's claim is barred. In other words, the claim is barred if a commercially reasonable time to deliver the books under the circumstances of this case was 124 days or less.

■ Moreover, the nine months begins to run once a reasonable time for delivery has elapsed, whether or not the shipper has actual knowledge of nondelivery. *John B. Sanfilippo & Son, Inc. v. Consolidated Rail Corp.*, 659 F.Supp. 990, 995 (N.D.Ill. 1987). Consequently, it makes no difference whether as of August 25, 1988 Imperial was unaware of the nondelivery. This fact would not excuse Imperial from its failure to file a timely notice of claim for P–I–E's failure to deliver. *See id.* Moreover, Imperial suggests no reason why it

could not have contacted Fawcett sometime after April 23, 1987 to determine if delivery had been completed with reasonable dispatch. *See id.*[1]

■ Though this Court need not determine what exact number of days would have been a commercially reasonable time for delivery in this case, it is clear that 124 days is too long. Accordingly, the Court can rule that as a matter of law a reasonable time for delivery had elapsed before August 25, 1988, and, therefore, Imperial's notice of claim was not timely filed. In reviewing the grant of a motion for directed verdict, the Court of Appeals for the Second Circuit held that where the facts are undisputed, what constitutes a reasonable time for delivery is a question of law for the court. *See Lazarus v. New York Cent. R.R.*, 299 F. 599, 600 (2d Cir.), *cert. denied*, 266 U.S. 612, 45 S.Ct. 95, 69 L.Ed. 467 (1924). However, whether the question be labelled a question of law or a mixed question of law and fact, where, as here, a reasonable jury could not find in favor of the nonmoving party on the issue of what constitutes a reasonable time for delivery, the court should rule on the issue as a matter of law and grant summary judgment against the nonmoving party. *See Anderson*, 477 U.S. at 248, 250–52, 106 S.Ct. at 2510, 2511–12; *Donahue*, 834 F.2d at 58–59. The opinion of Imperial's Vice President, noted above, is not sufficient to defeat the motion. The plaintiff has not fulfilled its obligation of demonstrating the existence of a genuine issue of material fact which would necessitate a trial.

## B. Estoppel or Excuse

Imperial argues that even if its notice of claim was filed more than nine months after a reasonable time for delivery had elapsed, P–I–E should be estopped from asserting plaintiff's failure to satisfy the

---

**1.** As the *Sanfilippo* court noted in rejecting a similar contention:

> Of course it may be more typical for customers to communicate with their shippers when goods (especially those already paid for) are not delivered as scheduled. But the allocation of responsibility in that respect is within the control of the parties, not the carrier. No

> reason has been advanced for creating an extracontractual duty on [the carrier] when the party directly interested in the specific transaction ... could readily have made arrangements to inform itself whether or not everything had gone ahead as planned.

*Sanfilippo*, 659 F.Supp. at 995 n. 11.

contractual condition precedent, or the untimeliness should be excused. As this Court is aware, the Second Circuit has suggested that the estoppel doctrine can circumvent the notice of claim requirement in the bill of lading. *See Pathway Bellows,* 630 F.2d at 905 & n. 10. In *Pathway Bellows,* the shipper failed to comply with the notice requirement where a written notice of claim filed before the nine month period had expired was found insufficient in form, and another filed one day after the nine month period had expired was found untimely. The court refused to relieve the shipper of its own procrastination, noting the shipper had identified no special circumstances warranting such relief. ⋅ *Id.* at 905. The court, nevertheless, noted that had the carrier misled the shipper into believing there was no need to file a notice of claim, the carrier might have been estopped, or had the shipper been unable with reasonable diligence to determine the extent of its loss within the nine month period, the untimely filing might have been excused. *Id.* at 905 n. 10.

██ Imperial, however, fails to present evidence which would support an estoppel or warrant an excuse from its untimely filing. *See, e.g., R.T.A. Corp. v. Consolidated Rail Corp.,* 594 F.Supp. 205, 210–11 (S.D.N.Y.1984) (unreasonable as a matter of law for plaintiff to infer from carrier's statements that carrier would reject plaintiff's claim and that claim had already been rejected that it need not file a written claim); *Foster Wheeler Energy Corp. v. Daily Express, Inc.,* 485 F.Supp. 268, 272 (M.D.Pa.1980) (no evidence there was any indication by carrier that no written claim was required). Even were the Court to accept the factual assertions of plaintiff's brief in opposition, *see* C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2723, at 63–65 (1983), that it made numerous calls to P–I–E, which provided little definitive information about the shipment, and that P–I–E never advised it to file a notice of claim, these facts would not raise a controversy as to material facts on the estoppel issue. P–I–E had no duty to inform Imperial of the contractually imposed hurdles which the latter was required to

clear as a condition on its right to proceed in this action. In any event, Imperial does not even contend that P–I–E led it to believe there was no need to file a written notice of claim. Further, although plaintiff attributes the delay in filing to its efforts in locating the shipment and awaiting a definitive response from P–I–E that the goods were either lost or stolen, it cannot reasonably claim that in the exercise of reasonable diligence it was unable to determine the loss it suffered—the value of the nondelivered shipment—within the filing period. Nor can it claim that in the exercise of reasonable diligence it was prevented from gathering the information needed to prepare a legally sufficient notice of claim. *See* 49 C.F.R. § 1005.2(b) (minimum filing requirements: writing containing facts sufficient to identify the shipment, asserting liability for alleged loss, and making claim for payment of determinable amount of money).

██ Imperial further maintains that P–I–E's actual or constructive knowledge of the facts should excuse Imperial from its own procrastination. However, this Court holds that the nine month filing period requirement does not make exception for the carrier's knowledge of the facts. *See Pathway Bellows,* 630 F.2d 900 (notice of claim filed one day late insufficient as matter of law even though carrier had knowledge of pertinent facts).

### CONCLUSION

There is no genuine issue of material fact requiring a trial, and P–I–E is entitled to judgment as a matter of law.

Accordingly, summary judgment is granted and the action is dismissed.

SO ORDERED.