HOME INSURANCE COMPANY
a/s/o Nippon Express U.S.A.,
Inc., Plaintiff,

v.

RAIL EXPRESS, INC., Rex Express, Rex Charter Trucks and North American Van Lines, Inc., Commercial Transport Division, et al., Defendants.

No. 93 Civ. 7131 (CBM).

United States District Court,
S.D. New York.

Oct. 18, 1994.

Michele Sullivan, Morgan, Melhuish, Monaghan Arvidson Abrutyn & Lisowski, New York City, for plaintiff.

George W. Wright, Kroll & Tract, Newark, NJ, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

## BACKGROUND

Plaintiff Home Insurance Company, Inc. brings this action against defendants to recover damages in the amount of $201,851.61 paid to its subrogee, Nippon Express U.S.A., Inc. (Nippon). The matter is now before the court on defendant's, North American Van Lines, Inc., Commercial Transport Division (NACT) motion for summary judgment.

Nippon had entered into a contract with N.H.K. Enterprises U.S.A., Inc. (N.H.K.) which owned "high definition television" equipment. N.H.K. is not a party in this action. Nippon agreed to transport high definition television equipment to New York for use in an AIDS benefit. Nippon's business is contracting for the shipment of goods. It then subcontracts with other parties to do the actual delivery. Consequently, Nippon subcontracted with Rail Express, Inc. to transport the goods from California to New York. Rail Express, Inc. shipped the equipment in a truck owned by NACT.

At the time of delivery, July 9, 1990, Nippon and NACT both made written reports for their own records of the fact that many pieces of the equipment were damaged as a result of their transport across the country. It was also at that time that defendant NACT had the opportunity to inspect the damage. On July 23, 1990 Nippon submitted a Notice of Claim to Rail Express. Soon afterwards, on July 30, 1990 Rail Express filed a written notice of claim with NACT. On May 1, 1991, plaintiff, Home, sent a written notice of claim to Rail Express specifying for the first time the damages to be $205,000.

Plaintiff claims that the notice of claim sent to NACT by Rail Express on July 30, 1990 was timely, specific as to the equipment damaged, the vehicle involved, and stating that it was holding defendant NACT responsible for the damage. In addition, plaintiff alleges that at the time of delivery, the monetary amount of damages to the equipment was not then ascertainable. As soon as they were able to do so, plaintiff submitted the dollar amount on May 1, 1991. Plaintiff also asserts that because NACT was able to make an inspection of the damaged equipment at the time of the arrival of the shipment, NACT had sufficient notice of the damage claim within the time allowed by its Tariff.

As may be expected, all defendants deny that they received legally sufficient notice of the claim within the time allowed by the Tariff and by law. Since no written claim for a specified amount was filed by plaintiff Home or Nippon with defendants within the requisite ICC nine month period after delivery of the goods, NACT asserts that it cannot be held liable for plaintiff's loss. Accordingly, NACT has moved for summary judg-

ment on all claims of plaintiff. This court heard oral argument on the motion on September 30, 1994. For the reasons discussed below, the court grants defendant, NACT's motion for summary judgment in its favor.

## I. Defendant's Summary Judgment Motion.

A court may grant summary judgment only "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of Law." Fed.R.Civ.P. 56(c). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Where, as in this case, the nonmoving party has the burden of proof at trial, the moving party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant has established a *prima facie* case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510; *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.1991) *cert. denied,* —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). All of the facts must be read in the most favorable manner for the nonmoving party. *Heilweil v. Mount Sinai Hospital,* 32 F.3d 718, 721 (2d Cir.1994). At that point, the court must determine whether the evidence presents a "genuine factual issue [ ] that properly can be resolved only by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. The court may grant summary judgment only when "no rational jury could find in favor of the nonmoving party." *Gallo v. Prudential Residential Services,* 22 F.3d 1219, 1224 (2d Cir.1994). Based upon the evidence submitted by the parties on defendant's motion, there are no genuine issues of

material fact. Accordingly, defendants are entitled to summary judgment as a matter of law.

## II. The Defendant's liability is governed by the terms of the tariff.

■ The rights of the parties to this action are governed by the carrier's tariff as filed with the ICC and cannot be enlarged. *Maislin Indus., U.S., Inc. v. Primary Steel,* 497 U.S. 116, 126, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990). In Section 2(b) and Item 225 of NACT's Tariff No. NOAM 100, there is the requirement that as a necessary condition to bringing a suit against NACT, that a written notice of claim be filed with NACT within nine months from delivery. In relevant part, Section 2(b) states:

> As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property ... Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

Paragraph 1(B) of the Tariff filed with the ICC No. ICC NOAM 100 provides in part:

> Minimum Filing Requirements. A communication in writing from a claimant, filed with the proper carrier within the time limit specified within the bill of lading or contract of carriage or transportation, and (1) containing facts sufficient to identify the baggage or shipment (or shipments) of property involved, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, will be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage ...

■ Defendant NACT's motion for summary judgment is based upon its belief that the claims against it were untimely filed and did not supply a specified or determinable

amount of money, and therefore must fail. For this Court to agree with defendant, NACT's contention, this court must find that plaintiff's preliminary notice of claim, dated July 30, 1990, failed to follow the mandatory requirements as set out in the carrier's tariff and ICC regulations set forth above.

 The clear language of the carrier's Tariff calls for the filing of any claim against the carrier to be made within nine months and to fulfill the three subcategories set out in the minimum filing requirements. For our analysis, the focus is whether the fact that the July 30, 1990 claim omitted any dollar amount for damages is a fatal flaw to plaintiff's claim since it was filed within nine months of delivery as required. From case law, the terms and conditions of an ICC-filed Tariff have the binding effect of a federal statute and also constitute the contract as a matter of law. *North American Philips Corp. v. Emery Air Freight,* 432 F.Supp. 519, 522 (S.D.N.Y.1977), *aff'd* 579 F.2d 229 (2d Cir.1978). In addition, the nine month filing period cannot be extended by the carrier nor can the carrier be estopped from asserting it as a defense. *Chesapeake & O.R. Co. v. Martin,* 283 U.S. 209, 221, 51 S.Ct. 453, 458, 75 L.Ed. 983 (1931); *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980). Therefore, claims are barred if they are not made in accordance with the tariff. *Keogh v. Chicago & N.R. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 49, 67 L.Ed. 183 (1922). In *Pathway Bellows,* the plaintiffs had submitted a "claim letter" which did not contain an assertion of liability and a specific dollar amount of damages within the allowed nine month period. *Pathway Bellows,* 630 F.2d at 902. The court held, "[A]s Pathway Bellows failed to comply with the contractually imposed condition precedent to maintain an action to recover its damages, the defendant-Trustees were entitled to prevail on their motion for summary judgment." *Pathway Bellows,* 630 F.2d at 904.

Because plaintiff did not comply with the terms of the tariff by failing to specify an amount in its July 30, 1990 notice of claim to NACT, its claim is barred. Neither plaintiff nor Nippon Express filed a written claim fulfilling the three requirements, in particular the third requirement of a specific dollar amount of damages claimed within nine months of delivery. The Tariff mandates that all conditions be met for a valid claim and timely filing. This court finds that as a matter of law the plaintiff did not submit a proper claim within the nine month period.

### III. Plaintiffs' Claim is Barred by ICC Regulations as applied in the 2nd Circuit.

 The leading case in this Circuit regarding ICC Regulations is *Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900 (2d Cir.1980). This case and its progeny have made it clear that these regulations "provide the appropriate standard for assessing the sufficiency of all claims irrespective of the way they may subsequently be resolved or adjudicated." *Pathway Bellows,* 630 F.2d at 904.

A case very similar on its facts to the case at hand is *Insurance Co. of North America v. s/s/ "TRANSWORLD BRIDGE," et al.,* 1994 WL 75249 (S.D.N.Y. March 7, 1994). The many parties in this case had a contract of shipment for vacuum cleaners which were shipped via train. There was a derailment which damaged some of the shipment. Sixteen days after the accident a letter was submitted that claimed to fulfill the requirements of the ICC Regulations but did not provide a dollar amount of damages; instead, the claimants said they would provide one when they received the figures themselves. *Insurance Co. of North America,* 1994 WL 75249, at *1. They submitted the precise figure well past the nine month time period. Judge McKenna wrote, "no amount, estimated or otherwise, was even alleged in Mitsui's preliminary claim. A fortiori, such a claim does not satisfy the standards promulgated by the ICC." *Insurance Co. of North America,* 1994 WL 75249, at *3. As a result, the claim was dismissed. Judge McKenna added:

Although one might question the wisdom of the exacting damages amount requirement in light of the difficulty a shipper may undergo in determining a precise claim within the period provided, especially in view of the fact that such a claim often

requires the carrier's cooperation in gathering the necessary information, the rule in the Second Circuit is clear. In *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900 (2d Cir.1980), the Court of Appeals reversed Judge Sand's ruling that a claim mailed on the last day of the nine month claims period, but received the following day, was timely filed. The court in Pathway Bellows stated that strict adherence to the claims filing period was justified in part because the ICC regulations also imposed "numerous obligations upon carriers, which are triggered by the receipt of a 'claim' ... [W]e think it neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constitutes a claim, so that a carrier may know one when it sees one." *Insurance Co. of North America*, 1994 WL 75249, at *3.

The facts concerning the claim submitted by plaintiffs in this case are similar because Home Insurance and Nippon Express did submit a letter which purported to be in accordance with ICC regulations but without a specific dollar amount. Plaintiffs submitted a specified dollar amount of damages after the nine month period. According to the law in this Circuit, the claim must be filed within the nine month period and it must contain the specific dollar amount of damages. Because the "claim letter" of July 30, 1990 did not contain any figure, it is not a proper claim.

## IV. Plaintiffs' failure to submit a proper timely claim is not excusable.

 In *Pathway Bellows* and cases following it, this Circuit has set out very limited reasons for why an untimely filing is excused. They are 1) if plaintiffs were deliberately misled into believing that such a filing was unnecessary or 2) if with the use of reasonable diligence the claimants could not submit the specific damages. *Pathway Bellows*, 630 F.2d at 904; *Imperial News Co. v. P–I–E Nationwide, Inc.*, 905 F.2d 641, 645 (2d Cir.1990). In these two cases, the court stated that the evidence must be compelling to show that the carrier misled the shipper not to file a proper claim. The court wrote,

"Estoppel cannot be invoked absent evidence that the carrier told the shipper not to file or otherwise led it to believe that filing was unnecessary to have its claim satisfied." *Imperial News Co.*, 905 F.2d at 645; *Accord Norton Spiel Assoc., Inc. v. Carolina Freight Carriers Corp.*, 1991 WL 318804 (E.D.N.Y. February 11, 1991). In its papers plaintiff claims that because NACT's tariff provision mentions claims of an uncertain amount that it could be interpreted to mean that the instant claim when initially filed met the Tariff's requirements. Subsection D of NACT's Tariff reads:

> Claims filed for uncertain amounts. Whenever a claim is presented against carrier for an uncertain amount, such as "$100 more or less", the carrier will determine the condition of the baggage or shipment involved at the time of delivery by it, if it was delivered, and will ascertain as nearly as possible the extent, if any, of the loss or damage for which it may be responsible. Carrier will not, however, voluntarily pay a claim under such circumstances unless and until a formal claim in writing for a specified or determinable amount of money has been filed in accordance with the provisions of paragraph (B) of this item.

This Section refers us back to paragraph 1(B) which sets out the minimum filing requirements, including a specified or determinable amount of money. Judge Haight of this court in *Bobst Division of Bobst Champlain, Inc. v. IML–Freight, Inc.*, 566 F.Supp. 665 (S.D.N.Y.1983) read this same language and concluded, "This can only be read as an indication that a claim for an 'uncertain amount' cannot be regarded as constituting compliance with the minimum filing requirements contained in subsection (b)." *Bobst*, 566 F.Supp. at 669. In *Bobst*, Judge Haight concluded that the carrier's silence in response to an inadequate claim filed by plaintiff cannot be misleading as to estop the carrier from asserting the filing requirements as a bar to the claim. The kind of behavior that is misleading was elaborated upon:

> Estoppel, within the context of the mandatory, statutory and regulatory scheme, should not be lightly found. In *Perini–North River Associates v. Chesapeake &*

*O. Ry.,* 562 F.2d 269, 272–73 (3d Cir.1977), ... the carrier's representatives specifically advised the claimant's representative that no further written claim need be filed, since a claim satisfactory to the carrier had already been filed. *Bobst,* 566 F.Supp. at 669–670.

Because plaintiff does not offer sufficient proof at this time from which a reasonable jury could find that plaintiff was misled or the Tariff was ambiguous, there is no ground for equitable estoppel based on misrepresentation to prevent NACT from asserting the filing period defense to the instant claim.

Moreover, plaintiff does not offer proof that by reasonable diligence it could not have submitted a specific damages figure within the nine month filing period. In order to find a late submission excusable using the reasonable diligence exception, the plaintiff must prove that the filing of the specific damages within the nine month filing period would have been impossible. *Bobst,* 566 F.Supp. at 671. The shipper bears the burden of showing that it was in fact impossible for it to comply with the requirement. *Bobst,* 566 F.Supp. at 670. Plaintiff has offered no evidence of impossibility and, therefore, has not carried its burden of demonstrating impossibility. Contrary to plaintiff's assertion, prejudice to the carrier by the delay is not a relevant factor. Judge Haight in *Bobst,* wrote, "No reference to prejudice to the carrier appears in this analysis. Indeed, in *Pathway* the claim was received only one day late, and was held barred; no one suggested that a showing of prejudice was necessary to sustain the defense of late filing." *Bobst,* 566 F.Supp. at 672.

### Conclusion

For the above reasons, defendant NACT's motion for summary judgment is granted. All plaintiff's claims are dismissed for failure to comply with the standards of the tariff and ICC regulations.