**ST. PAUL FIRE AND MARINE INSURANCE CO., Plaintiff,**

v.

**TRIAD INSTALLATION & MOVING SERVICES, INC., ETEC Systems Inc., and Ralph Larkin, Defendants.**

**Civil Action No. 3:00CV00860AWT.**

United States District Court,
D. Connecticut.

Aug. 28, 2001.

Edward W. Case, Smith Ketaineck & Musco, Hamden, CT, for St. Paul Fire and Marine Ins. Co.

Steven H. Malitz, Kristin T. Alix, Halloran & Sage, Hartford, CT, for Triad Installation & Moving Svcs., Inc.

Timothy S. Jajliardo, Danaher, Tedford, Lagnese & Neal, Hartford, CT, Peter J. Ponziani, Litchfield Cavo, Avon, CT, for Ralph Larkin, Etec Systems, Inc.

## *RULING ON MOTION FOR SUMMARY JUDGMENT*

THOMPSON, District Judge.

Defendant Triad Installation & Moving Services ("Triad") has moved for summary judgment based on the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706(e)(1) (formerly 49 U.S.C. § 11707(e)). For the reasons set forth below, its motion is being granted.

### I. *Factual Background*

Photronics, Inc. needed to move a certain piece of highly sophisticated and extremely delicate machinery from its plant in Switzerland to its Connecticut plant. It contracted with defendant Triad to move the machine. On July 22, 1998, Photronics' machine was damaged while defendant Triad was moving it. Plaintiff St. Paul Fire and Marine Insurance Co. is Photronics' insurer.

Photronics and Triad had executed two documents governing the shipment of Photronics' machine, both of which specified the same requirement for filing a claim. A bill of lading with the heading "Freight Bill" provided as follows:

SECTION 6. As a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine (9) months after delivery to consignee as shown on face hereof, or in case of failure to make delivery, then within nine (9) months after a reasonable time for delivery has elapsed; and suit must be instituted against carrier within two (2) years and one (1) day from the date when notice in writing is given by carrier to the claimant that carrier has disallowed the claim or any part or parts thereof specified in the notice. Where a claim is not filed or suit is not instituted thereon in accordance with the foregoing provisions, carrier shall not be liable and such a claim will not be paid.

A second bill of lading provided as follows:

### CLAIMS PROCEDURE AND LIMITATIONS

Sec. 2. . . .

(b) As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier in possession of the property when the loss, damage, injury or delay occurred, within nine months after delivery of the property (or in case of export traffic, within nine months after delivery at port of export) or, in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within two years and one day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid.

Both documents were signed on July 22, 1998 by Michael Gaddis, the agent of Photronics who received delivery of the shipment.

On July 28, 1998, Triad's president apologized in writing to Photronics for the damage to the machine and acknowledged that Triad may have played a role in causing the damage. On October 15, 1998, the plaintiff wrote a letter to defendant Triad asserting its right to any moneys paid by Triad to Photronics for the damage to Photronics' machine. The letter stated that the amount of loss was "Not Yet Determined." Neither the plaintiff nor Photronics sent any other notices or claims to Triad within nine months after delivery of the machine.

Defendant Triad asked its own insurer to investigate the amount of the damages. Triad's insurer determined that the estimated damages were $98,000. Then, in December 1998, defendant Triad sent its own notice letters to various parties involved in the Photronics shipment. In those letters, Triad stated that the estimated damages were $98,000.

## II. *Standard*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.,* 22 F.3d 1219, 1223 (2d Cir.1994). Rule 56(c) "mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987); *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1319–20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined ... to issue-finding; it does not extend to issue-resolution." *Gallo,* 22 F.3d at 1224.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in its favor." *Weinstock v. Columbia Univ.,* 224 F.3d 33, 41 (2d Cir.2000) (quoting *Del. & Hudson Ry. Co. v. Consol. Rail Corp.,* 902 F.2d 174, 177 (2d Cir.1990)).

## III. *Discussion*

■ Defendant Triad has moved for summary judgment on the ground that the plaintiff failed to comply with the claim filing requirements contemplated by the Carmack Amendment to the Interstate Commerce Act and the concomitant regulations of the Interstate Commerce Commission ("ICC").

The Carmack Amendment provides, in relevant part:

A carrier may not provide by rule, contract, or otherwise, a period of less than 9 months for filing a claim against it under this section and a period of less than 2 years for bringing a civil action against it under this section.

49 U.S.C. § 14706(e)(1) (1997). ICC regulations establish the minimum filing requirements for such claims for loss:

A written . . . communication . . . from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) asserting liability for alleged loss, damage, injury, or delay, and (3) making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provisions for filing claims embraced in the bill of lading or other contract of carriage.

49 C.F.R. § 1005.2(b) (West 2001).

 The Second Circuit strictly applies the provisions of the Interstate Commerce Act and the regulations of the ICC. *See Imperial News Co. v. P–I–E Nationwide, Inc.*, 905 F.2d 641 (2d Cir.1990) (strictly construing a bill-of-lading provision that a claim be filed "within 9 months after a reasonable time for delivery has elapsed"); *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900 (2d Cir.1980) (strictly construing ICC regulation's claim filing requirements).

It is in the interests of all parties to interstate carriage that the provisions of the Interstate Commerce Act and the regulations of the ICC be applied consistently and predictably. . . . The Supreme Court thus noted almost fifty years ago that

in respect to many matters concerning which variation in accordance with the

exigencies of particular circumstances might be permissible, if only the parties' private interests or equities were involved, rigid adherence to the statutory scheme and standards is required.

*Imperial News Co.*, 905 F.2d at 643–44 (quoting *Midstate Horticultural Co. v. Pa. R.R.*, 320 U.S. 356, 361, 64 S.Ct. 128, 88 L.Ed. 96 (1943)).

The reason for the Second Circuit's strict application of the claim filing requirements is "the well-recognized policy underlying the written claim requirement, i.e., not to permit the carrier to escape liability, but to insure that the carrier may make a prompt and thorough investigation of the claim." *Pathway Bellows*, 630 F.2d at 903 n. 5.

Furthermore, the regulations impose numerous obligations upon carriers, which are triggered by the receipt of a "claim." Having thus required a carrier to take certain actions once a claim is received, we think it is neither inappropriate nor beyond the authority of the ICC at the same time to provide a carrier with some guidance as to what constituted a claim, so that a carrier may know one when it sees one.

*Id.* at 904.

The plaintiff contends that its October 15, 1998 letter is a claim for loss satisfying the requirements of the Interstate Commerce Act and the ICC regulations. However, this letter to defendant Triad does not satisfy the requirement that a claim for loss "[make] claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 1005.2(b). Because the plaintiff did not specify the amount of damages claimed to be owed, it failed to provide adequate notice of the filing of a claim against defendant Triad by means of the October 15, 1998 letter.

Although some Circuits have apparently relaxed the determinable damage requirement, *see, e.g., Insur. Co. of N. Am. v. G.I. Trucking Co.,* 1 F.3d 903, 907 (9th Cir.1993), *cert. denied,* 510 U.S. 1044, 114 S.Ct. 690, 126 L.Ed.2d 658 [ ] (1994); *Wis. Packing Co. v. Ind. Refrigerator Lines, Inc.,* 618 F.2d 441, 446–48 (7th Cir.), *cert. denied,* 449 U.S. 837[, 101 S.Ct. 112, 66 L.Ed.2d 44] . . . , this Circuit has not.

*Consol. Rail. Corp. v. Primary Indus. Corp.,* 868 F.Supp. 566, 579 (S.D.N.Y. 1994). Thus the plaintiff failed to give, within the time specified by the bills of lading, the notice required by the bills of lading and strict application of the provisions of the Carmack Amendment and ICC regulations.

 Second, the plaintiff contends that defendant Triad had actual notice of the amount of damages because it had, through its own insurance company, investigated the amount of damages and estimated it to be $98,000. Thus, the plaintiff argues that defendant Triad had actual notice of a specified or determinable amount of damages within nine months of the date of delivery. However, such an argument runs counter to the policy reasons for requiring that a claim of loss put a party on notice of the amount of damages being claimed. Defendant Triad's knowledge of the amount of damages for which it might hold other parties liable is not equivalent to knowledge by Triad of the amount of damages for which the plaintiff claims Triad is liable, i.e. notice from the plaintiff or Photronics. Had Triad received a notice from the plaintiff containing an amount other than $98,000, it likely would have used that different amount in its own notice to the various other parties involved in the shipment, or, at a minimum, investigated whether it should. In addition, defendant Triad's acquiring knowledge of the possible amount of a claim by means of its insurer's investigation does not confirm for Triad that there is in fact a claim, does not start the running of the two years and one day limitations period provided for in the bills of lading, and does not inform Triad that any other obligations it may have upon receipt of a claim have been triggered. Thus, defendant Triad's making an estimate as to the amount of damages, independent of notice from the plaintiff or Photronics, does not serve the purposes for requiring such notice.

## IV. *Conclusion*

For the reasons stated above, defendant Triad's Motion for Summary Judgment (Doc. # 28) is hereby GRANTED.

It is so ordered.