Richard **PARRAMORE**, State Farm Fire and Casualty Company, Plaintiffs,

v.

**TRU–PAK MOVING SYSTEMS, INC.,** d/b/a Isenhower Tru–Pak, Atlas Van Lines, Inc., John Siegel, Kevin Franklin England, Defendants.

No. 1:02 CV 00271.

United States District Court, M.D. North Carolina.

Oct. 1, 2003.

Chad Bomar, Kent Lewis Hamrick, James Greer Welsh, Jr., Davis & Hamrick, L.L.P., Winston–Salem, NC, for plaintiffs.

Bradley Reid Kutrow, Jason D. Evans, Helms Mulliss & Wicker, P.L.L.C., Charlotte, NC, for defendants.

## MEMORANDUM OPINION AND ORDER

OSTEEN, District Judge.

Plaintiffs Richard Parramore and State Farm Fire and Casualty Company bring this action against Defendants Tru–Pak Moving Systems, Inc., d/b/a Isenhower Tru–Pak, Atlas Van Lines, Inc., John Siegel, and Kevin Franklin England. The claim involves damage done to a shipment of household goods during an interstate move. As such, the claim is governed by the Interstate Commerce Act, 49 U.S.C. § 10101 *et seq.*, and specifically the Carmack Amendment to that Act, 49 U.S.C. § 14706. In addition, Plaintiffs have asserted state law claims of negligence and breach of contract. This matter is now before the court on Defendants' Motion for Summary Judgment. For the reasons stated herein, the court will grant Defendants' motion with respect to Plaintiffs' state law claims. The court will further grant Defendants' motion with respect to all of Plaintiffs' remaining claims against Defendants Tru–Pak, Siegel, and England. Finally, the court will grant Defendants' motion with respect to all damages exceeding $70,000.00, exclusive of any additional fees and costs to which Plaintiffs may be entitled. The court will deny Defendants' motion with respect to Plaintiffs' Carmack Amendment claim against Defendant Atlas.

## I. BACKGROUND

In September 1999, Richard Parramore ("Parramore") was preparing to move from Newland, North Carolina to Grand Rapids, Michigan. To facilitate the move, Parramore went to the offices of Tru–Pak Moving Systems ("Tru–Pak") and contracted to have his household belongings transported to Michigan. At that time, Tru–Pak was owned by John Siegel ("Siegel") and was an agent of a larger carrier, Atlas Van Lines ("Atlas"). Through an agency agreement, Atlas expressly authorized Tru–Pak to arrange interstate shipments and to prepare bills of lading that would give the terms of such shipments. (Siegel Dep. at 16–17.)

On September 14, Tru–Pak sent a truck and personnel to Parramore's home so that the shipment could be loaded. The driver of the truck, Kevin Franklin England ("England"), presented Parramore with a bill of lading. The document bore Atlas's logo, as did England's uniform. The bill of lading further stated that Atlas was the "carrier" and Parramore was the "shipper." It is clear from the bill of lading that Parramore contracted for "full value protection" up to $70,000.00 and agreed to pay Atlas $4,021.13 for the shipping service. (Zammit Dep. Ex. 1.) Parramore signed the bill of lading and retained a copy.

Once the shipment was loaded, England departed from Parramore's home, intending to proceed to Tru–Pak's overnight storage facility in North Carolina. While en route, the truck was involved in an accident. Although the exact nature of the accident is disputed, it is agreed by all parties that the shipment was damaged.

Unbeknownst to Parramore, Atlas had not authorized England to drive an interstate shipment. (Anders Dep. at 31; Siegel Dep. at 41.) The agency agreement between Tru–Pak and Atlas provided that only "Atlas approved" drivers should be permitted to transport interstate shipments. (Siegel Dep. Ex. 1.) Siegel instructed England to transport Parramore's shipment even though Siegel knew that this action violated Tru–Pak's agency agreement with Atlas. (*Id.* at 40–41.)

Immediately following the accident, Tru–Pak made an attempt to identify the items in the shipment and sent some of them for repair. On September 17, Tru–Pak's Operations Manager, James Anders ("Anders"), notified Parramore of the accident and Tru–Pak's subsequent corrective actions. Anders' letter stated that "all but one or two items" would be repaired to a state that would "meet [Parramore's] approval." (Anders Dep. Ex. 1.)

On September 18, movers arrived at Parramore's Grand Rapids, Michigan home. Parramore asserts that the movers demanded payment before they would unload any items. Once he paid the previously agreed upon price of $4,021.13, the movers unloaded Parramore's shipment. Parramore alleges that everything delivered was dirty or heavily damaged and that several boxes had been repacked with the contents rearranged. Parramore also asserts that at least 50 items were missing.

On September 29, 1999, Parramore filed a loss claim with State Farm Fire and Casualty Company ("State Farm"). State Farm provided homeowners insurance on the shipped items and eventually paid Parramore $152,457.00 on the claim.

Having determined that it would subrogate any loss claim against Atlas and/or Tru–Pak, State Farm worked to negotiate the return of Parramore's missing items. As a result, a second delivery was made to Parramore on November 11, 1999, but items were damaged or missing.

Approximately one month after the accident, on November 12, 1999, Atlas terminated its agency agreement with Tru–Pak. (Siegel Dep. at 74–75, 82–84.) The termination was apparently unrelated to Parramore's shipment. Neither Parramore nor State Farm received any direct notice that the agency agreement had ended.

On January 11, 2000, Parramore's former attorney, Freeman C. Visser ("Visser"), notified Atlas that items were still missing from the shipment. Atlas's log reflects Visser was told Tru–Pak would be handling the matter, and a claim could be filed for the missing items. (*Id.* Ex. 21.) The log does not indicate if Visser was instructed to file the claim with Tru–Pak or with Atlas.

Atlas asserts that it subsequently mailed a claim form and instructions to Visser. Visser cannot recall if he received either, but contends that if he had, the claim form would have been completed and returned to Atlas.[1] (Visser Aff. ¶ 6.) Atlas denies having received any claim from Visser, Parramore, or State Farm. No documentation has been produced to show that any party ever completed an Atlas claim form. Atlas did receive a blank, unsigned claim form from Tru–Pak. Attached to the form were bills for repairs to Parramore's shipment. (Siegel Dep. Ex. 19.)

The parties have provided only one additional piece of correspondence that might constitute a written claim. This correspondence is a letter, dated May 4, 2000, sent from State Farm to Tru–Pak. It is not disputed that the letter bore an address that was partially incorrect. The letter identifies Parramore as the insured party and gives the date of the accident. It states in part, "This letter is to advise you that we are pursuing a subrogation claim for the damages to our insured's property from the accident involving your company." (Anders Dep. Ex. 6.) Various employees of Tru–Pak have stated that they cannot recall whether this letter was ever received. (*Id.* at 63; Siegel Dep. at 177.)

---

1. Mr. Visser no longer represents Parramore and has retired from his firm. (Visser Aff. ¶ 5.) His files at that firm have since been destroyed. (*Id.*)

Whether or not Atlas ever provided an official claim form with instructions, it is not disputed that the requirements for a claim are set forth in the parties' contract.[2] Section six of the bill of lading states that "as a condition precedent to recovery, a claim ... must be filed in writing with carrier within nine months after delivery." (Zammit Dep. Ex. 1.) The bill of lading also expressly incorporates a tariff. (*Id.*) The terms of that tariff set forth additional minimum filing requirements, such as the inclusion of a damage estimate. (Suter Decl. Ex. 2.)

Having been unable to collect any monetary settlement from Atlas or Tru–Pak, Parramore, and State Farm (collectively, "Plaintiffs") filed suit on March 8, 2002. Atlas, Tru–Pak, Siegel, and England (collectively, "Defendants") now move for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where an examination of the pleadings, affidavits and other proper discovery materials before the court demonstrates that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party has met that burden, the nonmoving party must then persuade the court that a genuine issue does remain for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts show-

ing that there is a *genuine issue for trial.*"

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted) (quoting Fed.R.Civ.P. 56(e)). The court must view the facts in the light most favorable to the nonmovant, drawing inferences favorable to that party if such inferences are reasonable. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980). However, there must be more than just a factual dispute; the fact in question must be material and the dispute must be genuine. Fed R. Civ. P. 56(c); *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A dispute is only "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

## III. ANALYSIS

Defendants have moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment on the following grounds: (1) the Carmack Amendment exclusively governs disputes between shippers and common carriers, thereby preempting Plaintiffs' state law claims; (2) Plaintiffs are barred from recovery under the Carmack Amendment because they failed to submit a sufficient written claim as required by Interstate Commerce Commission ("ICC") regulations; (3) Defendants Tru–Pak, Siegel, and England were not parties to the bill of lading as a matter of law and may not be held liable under the Interstate Commerce Act; and (4) Plaintiffs' damages are limited to

---

**2.** Although State Farm obtained a copy of the bill of lading, the agent handling Parramore's claim has admitted that he never read these provisions. (Zammit Dep. at 46–49.) State Farm's subrogation unit also appears to have been unaware of the requirements. (Siegel Dep. Ex. 23.)

$70,000.00, the maximum amount of liability set forth in the bill of lading.

## A. *The Carmack Amendment's Preemption of State Law Claims*

In passing the Carmack Amendment to the Interstate Commerce Act, Congress intended to "relieve shippers of the burden of searching out a particular negligent carrier from among the often numerous carriers handling an interstate shipment of goods." *Reider v. Thompson,* 339 U.S. 113, 119, 70 S.Ct. 499, 502, 94 L.Ed. 698 (1950). The Carmack Amendment was meant "to create a national uniform policy regarding the liability of carriers under a bill of lading for goods lost or damaged in shipment." *Shao v. Link Cargo (Taiwan), Ltd.,* 986 F.2d 700, 706 (4th Cir.1993). In fact, the Carmack Amendment's provisions are so comprehensive that "[a]lmost every detail of the subject is covered ... there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulations with reference to it." *Adams Express v. Croninger,* 226 U.S. 491, 505–06, 33 S.Ct. 148, 152, 57 L.Ed. 314 (1913).

 When federal law supplants state authority with such pervasive regulation, state law remedies are usually deemed to be preempted. For this reason, the Fourth Circuit has joined virtually all others in agreeing that the Carmack Amendment preempts all state law claims, whether they contradict or supplement Carmack Amendment remedies. *See Shao,* 986 F.2d at 706–07 (concluding that "[Congress intended] to create a national uniform policy regarding the liability of carriers .... Allowing a shipper to bring common law breach of contract or negligence claims against a carrier ... conflicts with this policy. We therefore agree that ...

[state] common law claims are preempted by the Carmack Amendment."); *see also Advanced Sterilizer Dev. & Design, Inc. v. Roadway Express, Inc.,* 2002 WL 31165144, at *2 (M.D.N.C. Aug.21, 2002).

Plaintiffs raise a new argument in response to this well-settled rule. Plaintiffs assert that the Carmack Amendment does not preempt their state law claims with respect to Defendants Tru–Pak, Siegel, and England because certain acts by these Defendants were ultra vires. Plaintiffs contend that ultra vires acts would not be within the Carmack Amendment's scope and that state law claims arising from those acts would then avoid preemption.

Plaintiffs cite only *Taylor v. Mayflower Transit, Inc.,* 161 F.Supp.2d 651, 658 (W.D.N.C.2000), a case in which the court held that agents of a principal carrier were not parties to the bill of lading. The court noted that "[t]here [were] no allegations in the complaint or in plaintiffs' response that such agents acted ultra vires." *Id.* By this statement, which appears to have been made in passing, the court implies that a carrier's agent might be liable under the Carmack Amendment if that agent acted ultra vires.[3] There is no suggestion in *Taylor* that an agent acting ultra vires might also be liable under state law claims. This court could find no further precedent that allowed state law claims to survive Carmack Amendment preemption when an agent of the carrier acted ultra vires.

 Having found no case law directly on point, this court will not conclude that ultra vires acts by a carrier's agent would allow Plaintiffs' state law claims to avoid Carmack Amendment preemption. Plaintiffs have failed to point out any specific facts that create a genuine dispute as to

---

**3.** As will be discussed further herein, the ordinary rule is that only principal carriers and not their agents may be liable for damages

under the Carmack Amendment. *See* 49 U.S.C. § 13907(a).

whether their state law claims may avoid Carmack Amendment preemption. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510 (upon defendant's demonstration that no genuine issues of material fact are present, plaintiff bears the burden of showing disputed factual issues). Accordingly, Defendants' motion for summary judgment will be granted with respect to Plaintiffs' state law claims based on negligence and breach of contract.

### B. *Liability of Defendants Tru–Pak, Siegel, and England*

Defendants' next argument in favor of summary judgment addresses only the potential liability of Defendants Tru–Pak, Siegel, and England under the Interstate Commerce Act. Defendants claim that agents of a disclosed principal carrier (in this case Atlas) cannot be held liable because they are not parties to the bill of lading as a matter of law. Plaintiffs dispute this claim by arguing that Defendants Tru–Pak, Siegel, and England acted outside their authority as Atlas's agents when they violated their agency agreement. Plaintiffs allege that these acts expose Defendants Tru–Pak, Siegel, and England to direct liability under the Interstate Commerce Act.

The Interstate Commerce Act provides that a principal carrier is liable for the acts of its disclosed agents. The statute clearly states that liability will extend to acts within the agent's actual or apparent authority:

> Each motor carrier providing transportation of household goods shall be responsible for all acts or omissions of any of its agents which relate to the performance of household goods transportation services (including accessorial or terminal services) and which are within the actual or apparent authority of the agent from the carrier or which are ratified by the carrier.

49 U.S.C. § 13907(a).

■ While this federal statute creates liability for the principal carrier, it simultaneously relieves the carrier's agents of any liability, provided the transaction occurred pursuant to a valid bill of lading. *See id.; Taylor v. Mayflower Transit, Inc.,* 161 F.Supp.2d 651, 658 (W.D.N.C.2000); *Werner v. Lawrence Transp. Sys., Inc.,* 52 F.Supp.2d 567, 568–69 (E.D.N.C.1998). Courts have regularly held that the agents of disclosed principals are not liable for damages arising under § 13907(a), and that these agents are not parties to the bill of lading as a matter of law. *See, e.g., Taylor,* 161 F.Supp.2d at 658; *O'Donnell v. Earle W. Noyes & Sons,* 98 F.Supp.2d 60, 63 (D.Me.2000); *Werner,* 52 F.Supp.2d at 568–69; *Fox v. Kachina Moving & Storage,* 1998 WL 760268, at *1 (N.D.Tex. Oct.21, 1998); *see also* Restatement (Second) of Agency § 320 (1957) ("[A] person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.").

■ As per the provisions of 49 U.S.C. § 13907(a), Atlas is liable for all actions by Defendants Tru–Pak, Siegel, and England which fell within their actual or apparent authority as Atlas's agents. Conversely, Tru–Pak, Siegel, and England will not be liable for acts that were within their authority as Atlas's agents, nor are they parties to the bill of lading as a matter of law. Plaintiffs, however, assert that these Defendants did commit unauthorized acts which created direct liability for them under the Interstate Commerce Act.

Siegel concedes that he directed England to drive Parramore's shipment, even though England was not an "Atlas approved driver." (Siegel Dep. at 40–41.) That directive violated Tru–Pak's agency

agreement with Atlas. Since England was not an "Atlas approved driver," Plaintiffs claim that England lacked *actual* authority to handle initial transport of Parramore's household goods.

However, this *violation* of Tru–Pak's agency agreement did not affect England's *apparent* authority to transport the shipment. "Apparent authority results from a principal's manifestation of an agent's authority to a third party, *regardless of the actual understanding between the principal and agent.*" *Auvil v. Grafton Homes, Inc.*, 92 F.3d 226, 230 (4th Cir.1996) (emphasis added). In this case, Atlas did manifest to Parramore that Tru–Pak was Atlas's agent. Given the facts on record, Parramore would have been reasonable in this belief. For example, the bill of lading provided to Parramore by Tru–Pak clearly bore Atlas's logo and identified Atlas as the "carrier." (Compl.Ex. A.) England's Tru–Pak uniform also bore Atlas's logo. (Siegel Dep. at 27.)

All facts known to Parramore clearly indicated that England and Tru–Pak were operating under Atlas's full authority. Plaintiffs do not allege that Parramore was aware of the agency agreement or its terms at the time his shipment was collected. Absent such knowledge, Parramore could not have known that Tru–Pak was acting outside its actual authority. As a result, Defendants Tru–Pak, Siegel, and England continued to act with apparent authority as agents of Atlas.

Plaintiffs argue that Defendants Tru–Pak, Siegel, and England are still subject to liability for damages under the Interstate Commerce Act because they acted ultra vires. Plaintiffs again point to England's transportation of the shipment as a violation of Tru–Pak's agency agreement and an ultra vires activity. Plaintiffs do not allege any further acts by Defendants Tru–Pak, Siegel, or England that could be construed as ultra vires.

The term ultra vires is most commonly used to refer to acts that are beyond the scope of a corporation's purposes, as set forth in their articles of incorporation or bylaws. However, the term also has a broader meaning, implicating all actions that are "performed without *any* authority to act on the subject." Black's Law Dictionary 1522 (6th ed.1990) (emphasis added). The Supreme Court has employed the term in holding that certain acts by a state officer lacked authority and were therefore unprotected by sovereign immunity. In this context, the Court has held that "a state officer may be said to act ultra vires only when he acts 'without any authority whatever.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n. 11, 104 S.Ct. 900, 908 n. 11, 79 L.Ed.2d 67 (1984) (quoting *Florida Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 697, 102 S.Ct. 3304, 3321, 73 L.Ed.2d 1057 (1982)).

To find that Defendants Tru–Pak, Siegel, and England acted ultra vires would require that these Defendants acted in the complete absence of authority. Having already found that Tru–Pak, Siegel, and England acted within their apparent authority, the court now concludes that these Defendants did not act ultra vires or "without any authority whatever." *Id.*

Since Defendants Tru–Pak, Siegel, and England were acting within their apparent authority as agents of Atlas, a disclosed principal, they were not parties to the bill of lading as a matter of law. Under 49 U.S.C. § 13907(a), these Defendants may not be held liable for the damage to Parramore's shipment. Plaintiffs' sole remedy in this case lies in their Carmack Amendment claim against Atlas, the disclosed principal carrier. Summary judgment is therefore granted with respect to all of Plaintiffs' claims against Defendants Tru–Pak, Siegel, and England.

C. *Plaintiffs' Compliance with the Carmack Amendment*

Defendants' third argument in favor of summary judgment goes to the sufficiency of Plaintiffs' claim. The parties' contract, the Carmack Amendment, and ICC regulations set forth the requirements for a valid claim. Defendants contend that Plaintiffs did not comply with these requirements and should be barred from recovery.

The bill of lading provided to and signed by Parramore clearly states that "[a]s a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier." (Zammit Dep. Ex. 1.) The bill of lading also expressly incorporates the terms of Atlas's tariff, stating "the terms of the tariffs that are incorporated include (I) limits on the Carrier's liability for loss, damage or delay of goods, including fragile or valuable goods; (II) claim restrictions; and (III) rights of the Carrier to impose monetary penalties on shippers." (*Id.*)

The "claim restrictions" referred to are actually minimum filing requirements imposed on any claim submitted to Atlas. The requirements in Atlas's tariff are identical to those set forth in the applicable ICC regulations:

A written or electronic communication ... from a claimant, filed with a proper carrier within the time limits specified in the bill of lading or contract of carriage or transportation and: (1) Containing facts sufficient to identify the baggage or shipment (or shipments) of property, (2) Asserting liability for alleged loss, damage, injury, or delay, and (3) Making claim for the payment of a specified or determinable amount of money, shall be considered as sufficient compliance with the provision for filing claims embraced in the bill of lading or other contract of carriage....

49 C.F.R. § 370.3 (2003).

Although a copy of the tariff was not offered to Plaintiffs prior to shipping, the bill of lading clearly states that the tariff's terms are part of the contract. The bill of lading also notes that a copy of the tariff will be furnished on request. Plaintiffs do not allege that they ever requested a copy of the tariff.

In this case, the parties contacted each other many times to discuss their conflict. However, most of these contacts were oral communications and cannot satisfy the written claim requirement set forth in the bill of lading.

The parties have produced only one piece of written correspondence that might constitute a valid claim—the letter State Farm sent to Tru–Pak on May 4, 2000, advising its intent to pursue a subrogation claim. (Anders Dep. Ex. 6.) The parties vigorously dispute whether this letter was ever received, and if it were, whether it could constitute a sufficient claim as required by the bill of lading, the tariff, and the ICC regulations.

1. *Receipt of the Claim*

The parties first dispute whether State Farm's letter was ever received by Tru–Pak. A copy of the letter produced by Plaintiffs bears the address "1205 6th St SW P.O. Box 773." (Siegel Dep. Ex. 24.) Two facts are not disputed: (1) at the time of the accident, the aforementioned address was valid; (2) after the accident, Tru–Pak moved to a new location. Plaintiffs assert they were unaware of the move until after the claim had been mailed. Although Tru–Pak's street address changed, it continued to maintain the same post office box. As such, the post office box number appearing on the letter was valid, although the street address was not.

Anders stated in his deposition that the post office would not have forwarded the letter to Tru–Pak's new address because the location lacked a mail receptacle. (Anders Dep. at 66–68.) He further stated that the post office did not forward any mail to Tru–Pak that bore the wrong street address. (*Id.*)

■ However, when viewed in the light most favorable to Plaintiffs, the court finds that a genuine factual dispute remains as to whether this letter was received. The letter is addressed, in part, to a correct post office box where Tru–Pak did receive mail. (Anders Dep. at 68.) Tru–Pak continued to use the incorrect address in a letter it sent to State Farm *after* Tru–Pak's location had changed. (Siegel Dep. Ex. 20.) Further, State Farm appears to have faxed a copy of the letter to Tru–Pak on August 29, 2000. (Siegel Dep. Ex. 25.) There is no contention that the fax number was incorrect.

When the resolution of factual issues necessarily depends on a determination of credibility, summary judgment is improper. *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir.1979); *see* Fed.R.Civ.P. 56(e) (comments to 1963 amendments). In this case, Plaintiffs assert that the letter was mailed while Defendants claim it was never received. There are facts on the record to support either contention, but these facts must be viewed in the light most favorable to Plaintiffs. Since the issue of whether the letter was ever received is certainly material to this case, the court will not grant a motion for summary judgment on these grounds.

Defendants next contend, even if the letter were received by Tru–Pak, summary judgment is proper because Plaintiffs did not file their claim with Atlas directly.

Defendants argue, because Atlas ended its agency agreement with Tru–Pak shortly after the accident, Tru–Pak is not a "proper carrier" with which a claim may be filed. *See* 49 C.F.R. § 370.3(b).

■ Considering the facts in the light most favorable to Plaintiffs, the court finds there is a genuine issue of material fact as to whether Tru–Pak continued to have the authority to receive claims for Atlas even after the termination of the agency agreement. The agency agreement between the parties provided in section 2(h) that Tru–Pak would "transmit promptly to Atlas notices of all civil, criminal and administrative actions and all claims, including claims for loss, damage or delay to shipments." (Siegel Dep. Ex. 1.) Section 9(e) further provides, upon termination of the agency agreement, Tru–Pak's "rights and privileges under this Agreement, but not [Tru–Pak]'s obligations and liabilities, shall cease." (*Id.*) This language would require Tru–Pak to transmit any relevant claims it received to Atlas, regardless of the agreement's termination. Tru–Pak contends, had it received Plaintiffs' claim, it would have forwarded the claim to Atlas. (*Id.* at 84, 176.) Plaintiffs also assert that Atlas told them Tru–Pak would be handling the claim, leading Plaintiffs to believe any claims should be filed with Tru–Pak.[4] (*Id.* Exs. 21–23.)

These facts indicate there is a genuine and material dispute regarding Tru–Pak's authority to receive claims on behalf of Atlas. Viewing the facts in the light most favorable to Plaintiffs, there is reason to believe that Atlas gave Tru–Pak actual authority to receive claims, even after the agency agreement terminated. In the alternative, there is an indication that Atlas

---

**4.** Although Atlas counters with the allegation that it provided Plaintiffs with a claim form and instructions, Plaintiffs deny that any such forms were received. (Visser Aff. ¶ 6.) Since all facts must be considered in favor of the nonmovants, the court will assume for the purposes of this motion that the forms were not received.

may have made statements that caused Plaintiffs to reasonably believe they should have filed their claim with Tru–Pak. In that circumstance, Tru–Pak would retain apparent, if not actual, authority to receive the claim on behalf of Atlas. As a result of this material factual dispute, Defendants are not entitled to summary judgment on grounds that Atlas never received Plaintiffs' claim.

### 2. *Sufficiency of the Claim*

Defendants contend, even if State Farm's letter were received, summary judgment is proper because the claim did not meet the requirements set forth by ICC regulations. As set forth above, these regulations require that a valid claim, at minimum, must: "(1) Contain[ ] facts sufficient to identify the baggage or shipment (or shipments) of property, (2) Assert[ ] liability for alleged loss, damage, injury, or delay, and (3) Mak[e] claim for the payment of a specified or determinable amount of money." 49 C.F.R. § 370.3. Atlas's tariff also sets forth these same requirements.

Defendants allege the State Farm letter fails the first and third of these requirements. By way of identifying the shipment, the State Farm letter gives only Parramore's name and the date of loss. As to the monetary value of the claim, the letter does not include a damage estimate.

Plaintiffs contend, despite their failure to strictly comply with the regulatory requirements, the State Farm letter does substantially comply with these provisions. They assert that identifying Parramore and giving the date of loss were sufficient for Tru–Pak and Atlas to identify the shipment in question. They further assert that the inclusion of a specific amount of damages was unnecessary since Tru–Pak and Atlas were fully capable of estimating the value themselves. As support for this assertion, Plaintiffs put forward State Farm's own estimate of $152,457.00, which was paid to Parramore through his homeowner's insurance policy. Plaintiffs do not allege that they gave Defendants any further notice of a specific amount to be claimed.

Defendants urge this court to apply a strict compliance standard to the letter in question; Plaintiffs argue that a substantial compliance standard should be applied. There is currently a split among the circuits regarding which approach should be taken when evaluating Carmack Amendment claims. *Compare Salzstein v. Bekins Van Lines, Inc.,* 993 F.2d 1187, 1189–91 (5th Cir.1993) (finding that shipper's claims must strictly comply with Carmack Amendment requirements), *and Nedlloyd Lines, B.V. Corp. v. Harris Trans. Co.,* 922 F.2d 905, 908–09 (1st Cir.1991) (same), *and Pathway Bellows, Inc. v. Blanchette,* 630 F.2d 900, 904–05 (2d Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981) (same), *with Trepel v. Roadway Express, Inc.,* 194 F.3d 708, 713 (6th Cir.1999) (finding that shipper's claim need only substantially comply with Carmack Amendment requirements), *and Insurance Co. of N. Am. v. G.I. Trucking Co.,* 1 F.3d 903, 906–07 (9th Cir.1993) (same), *and Wisconsin Packing Co. v. Indiana Refrigerator Lines, Inc.,* 618 F.2d 441, 446–47 (7th Cir.1980) (same), *and Atchison, Topeka & Santa Fe Ry. Co. v. Littleton Leasing & Inv. Co.,* 582 F.2d 1237, 1240–41 (10th Cir.1978) (same). The Fourth Circuit has not had occasion to determine which standard of compliance it would apply to Carmack Amendment claims.

Courts following a strict compliance standard routinely find that claims are insufficient unless some price is quoted. *See, e.g., Salzstein,* 993 F.2d at 1190–91 (holding that to allow recovery based on a claim that contained no damage estimate would "frustrate the regulatory purpose of

encouraging voluntary settlement"); *Ned-lloyd*, 922 F.2d at 908 (ruling that two letters submitted by the shipper were inadequate as claims because they failed to include damage estimates); *General Elec. Co. v. Brown Transp. Co.*, 597 F.Supp. 1258, 1267 (E.D.Va.1984) (finding shipper's claim inadequate because shipper knew the amount of damages but failed to include the information). By contrast, at least two circuits following a substantial compliance standard have found that a price estimate is not necessarily required. *G.I. Trucking*, 1 F.3d at 906–07 (finding that a shipper's claim was sufficient even though no amount of damage was specified); *Wisconsin Packing*, 618 F.2d at 445–46 (finding that a shipper's initial claim may lack a damage amount but that the carrier should be given supplemental notice of any estimate that is later calculated). Under the strict compliance view, Plaintiffs' letter is inadequate as a Carmack Amendment claim, while under the substantial compliance view the letter may be sufficient.

At this stage, the court will refrain from deciding which legal standard should be applied. When inquiry into the facts is necessary to a determination of the correct legal principle, summary judgment is generally not appropriate. *Podberesky v. Kirwan*, 38 F.3d 147, 156 (4th Cir.1994), *cert. denied*, 514 U.S. 1128, 115 S.Ct. 2001, 131 L.Ed.2d 1002 (1995) (citing *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir.1950) (finding that summary judgment should be granted "only where it is perfectly clear that ... inquiry into the facts [would] not [be] desirable to clarify the application of the law.")).

When viewed in the light most favorable to Plaintiffs, a genuine factual dispute exists regarding Defendants' notice of this claim. Numerous contacts between Plaintiffs and Defendants are documented in the exhibits presented to the court. Taken together with State Farm's letter, Defendants' actual notice may have been sufficient to constitute a valid Carmack claim under the substantial compliance view. However, extensive inquiry into the factual record and the credibility of the parties would be needed before the court could determine if the substantial compliance view is the appropriate legal standard to apply.

Since it cannot be said that Plaintiffs' claim was insufficient as a matter of law, the court will not grant Defendants' motion for summary judgment on those grounds.

### 3. *Waiver and Estoppel*

Even if the court were to find that Plaintiffs' claim was insufficient as a matter of law, Plaintiffs have argued that Defendants were not entitled to an adequate or timely claim. Plaintiffs contend that Defendants should be estopped from asserting their right to a proper claim or, in the alternative, that Defendants waived their right to a proper claim.

The Fourth Circuit has not yet considered possible exceptions to the Carmack Amendment's notice requirements. Courts that have considered the matter apply only a few, including estoppel and waiver.[5] If applicable, these exceptions

---

**5.** Only one additional exception has been recognized but does not apply in this case. This exception occurs when a shipper is "unable, despite the exercise of reasonable diligence, to ascertain the extent of its loss within the claim filing period." *Nedlloyd Lines, B.V. Corp. v. Harris Trans. Co.*, 922 F.2d 905, 909 (1st Cir.1991) (citing *Pathway Bellows, Inc. v.*

*Blanchette*, 630 F.2d 900, 905 n. 10 (2d Cir. 1980), *cert. denied*, 450 U.S. 915, 101 S.Ct. 1357, 67 L.Ed.2d 340 (1981)). Since State Farm determined the amount of damage and paid $152,457.00 to Parramore, Plaintiffs may not assert that they were unable to "ascertain the extent of loss."

may relieve a shipper of his obligation to file a valid and timely claim.

Estoppel occurs when "one party has reasonably relied on the conduct or statements of another; if the relying party suffers harm as a result of this reliance, the inducing party can be estopped from disavowing his earlier conduct or statement." *Salzstein*, 993 F.2d at 1191. "Estoppel is not to be found lightly .... Estoppel cannot be invoked absent evidence that the carrier told the shipper not to file or otherwise led it to believe that filing was unnecessary to have its claim satisfied." *Imperial News Co. v. P–I–E Nationwide, Inc.*, 905 F.2d 641, 645 (2d Cir. 1990).

In this case, Plaintiffs plead ignorance of the written claim requirements. However, these requirements were specifically set forth in their bill of lading, with further conditions included in the incorporated tariff. Defendants had no further duty to make Plaintiffs aware of the terms. That they did not specifically seek to advise Plaintiffs of these terms does not constitute misleading conduct. *See Imperial News*, 905 F.2d at 645 (declining to apply estoppel where a shipper made repeated calls to its carrier but was never advised of the need to file a claim). Absent misleading statements or conduct by Defendants, Plaintiffs cannot claim estoppel solely because they were ignorant of their contract's unambiguous terms. *See Home Ins. Co. v. Rail Express, Inc.*, 865 F.Supp. 183, 188 (S.D.N.Y.1994) (declining to apply estoppel where a shipper's insurer had not shown that it was misled as to the terms of the tariff or that the tariff itself was ambiguous).

Plaintiffs next assert that estoppel is appropriate because Tru–Pak repeatedly assured them that the shipment would be repaired and delivered.[6] When viewed in the light most favorable to Plaintiffs, these facts show that Tru–Pak may have intended to provide some sort of settlement. Even if Plaintiffs' reliance on a possible settlement were reasonable, that alone may not justify estopping Defendants from requiring a written claim. *See Bruker Instruments, Inc. v. Bay State Moving Sys., Inc.*, 15 F.Supp.2d 156, 161 (D.Mass.1998) (finding that a settlement offer by a carrier's agent did not estop the carrier from requiring that the shipper file a timely and sufficient claim).

However, Plaintiffs also contend that they had several contacts with Atlas during this time. Plaintiffs claim that Atlas repeatedly told them the claim would be handled exclusively by Tru–Pak. (Siegel Dep. Exs. 21–23.) Making all reasonable inferences in Plaintiffs' favor, a jury could conclude that these statements by Atlas, coupled with the representations made by Tru–Pak, may have caused Plaintiffs to believe that they did not need to submit a written claim. Atlas's statements would lead Plaintiffs to believe that Tru–Pak alone was handling the claim and Tru–Pak's own statements indicated that it would settle the claim by repairing and delivering the shipment.

These same facts cause Plaintiffs to argue that Defendants waived their right to a timely written claim. Waiver is a second exception to the Carmack Amendment's notice requirement. "Waiver involves the voluntary or intentional surrender of a known right." *Salzstein*, 993 F.2d at 1191. Offers to settle a claim do not usually amount to a waiver of a carrier's right to written notice. *See Bruker*, 15 F.Supp.2d at 161 (finding that a settlement offer by carrier's agent did not waive carrier's right to a timely and sufficient claim). As such,

---

**6.** As of June 4, 2003, Plaintiffs continued to allege that some items had not been delivered.

(Pls.' Br. Opp'n Defs.' Mot. Summ. J. at 14–15.)

Tru–Pak's offers to repair the shipment do not amount to waiver by Atlas. However, when viewed in the light most favorable to Plaintiffs, Atlas did maintain that Tru–Pak alone would handle the claim. This fact could allow a reasonable jury to find that Atlas effectively waived its right to receive a claim.

█ These actions create a genuine issue of material fact as to whether Defendants induced Plaintiffs' reasonable belief that they would not be held to the ordinary claim requirements. Although Defendants have shown that Plaintiffs' claim may not meet these requirements, Plaintiffs have shown that their suit is not necessarily barred on those grounds. When viewed in the light most favorable to Plaintiffs, the facts could support a reasonable jury's finding that Defendants waived or are estopped from asserting their right to a timely and adequate claim. As a result, the court will deny Defendants' motion for summary judgment with respect to the adequacy of Plaintiffs' claim under the Carmack Amendment.

### 4. *Applicable Deadline for Claims*

The bill of lading provides that "[a]s a condition precedent to recovery, a claim for any loss or damage, injury or delay, must be filed in writing with carrier within nine months after delivery ... *or in case of failure to make delivery, then within nine months after a reasonable time for delivery has elapsed.*" (Zammit Dep. Ex. 1) (emphasis added). This time limit is an acceptable minimum period for filing under the Carmack Amendment. 49 U.S.C. § 14706(e)(1).

Plaintiffs note that Tru–Pak still retains a hand-painted occasional table belonging to Parramore. (Siegel Dep. at 155, 157–58.) Since the filing deadline runs from the date of delivery, and delivery is not yet complete, Plaintiffs reason that the nine-month deadline has not yet begun to run in their case. Presumably, Plaintiffs would then still be able to file a timely and adequate claim with Atlas.

█ However, the contract provides that, in the case of non-delivery, the filing deadline will run from "a reasonable time for delivery." Accepting Plaintiffs' argument would stretch the meaning of "a reasonable time for delivery" too far. Although Tru–Pak may still retain a portion of Parramore's shipment, delivery at this late date (more than four years) would clearly constitute an unreasonable delay. The *reasonable* time for delivery and the subsequent nine month filing period have undoubtedly expired.

Exactly when the time for reasonable delivery passed does not need to be addressed because Plaintiffs do not set forth any other written communication that could constitute a valid Carmack Amendment claim. The only *written* source of notice to Defendants that could be construed as a Carmack Amendment claim is the State Farm letter of May 4, 2000.[7] The court's further consideration of this matter will then be limited to whether the State Farm letter will suffice as a written claim as required by the bill of lading and ICC regulations or, in the alternative, whether Defendants waived or are es-

---

**7.** State Farm Agent Zammit has stated that State Farm sent no other documents to Tru–Pak or Atlas which might constitute a claim. (Zammit Dep. at 41–42.) In addition, he took no action at all from April 2000 through July 2001. (*Id.*) Plaintiffs have not produced any documents filed with either Tru–Pak or Atlas between September 14, 1999, the date of the accident, and May 4, 2000, the date of the State Farm letter. Following the letter, the only document provided that could constitute a written claim is Plaintiffs' complaint of March 8, 2002. The complaint contains all the elements of a valid Carmack Amendment claim, but certainly was not filed within nine months of a reasonable time for delivery.

topped from asserting their right to such a claim.

#### 4. *Amount of Plaintiffs' Maximum Recovery*

Defendants have also moved for summary judgment as to damages. Defendants allege that the bill of lading limits Plaintiffs' recovery to a maximum of $70,000.00. (Defs.' Br. Supp. Mot. Summ. J. at 14–15.) Plaintiffs concede their recovery is limited to $70,000.00, not inclusive of any costs or fees to which they may be entitled. (Pls.' Br. Opp'n Defs.' Mot. Summ. J. at 18–19.) Since the parties have agreed on this point, the court will grant summary judgment to Defendants with respect to any damages in excess of $70,000.00, not inclusive of costs and fees.

### IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendants' Motion for Summary Judgment [20] with respect to Plaintiffs' state law claims is GRANTED; with respect to all of Plaintiffs' claims against Defendants Tru–Pak, Siegel, and England is GRANTED; with respect to all damages exceeding $70,000.00, exclusive of any additional fees and costs to which Plaintiffs may be entitled is GRANTED. The Defendants' motion is DENIED with respect to Plaintiffs' Carmack Amendment claim against Defendant Atlas.